**Jeffrey W. Cowan, Esq. SBN 157474**
**Ilana Makovoz, Esq., SBN 229827**
The Cowan Law Firm
1541 Ocean Avenue, Suite 200
Santa Monica, California  90401
Tel:  (310) 394-1420
Fax: (310) 394-1430

Attorneys for **Jeffrey J. Sadinsky,**
**Mary E. Sadinsky, and the Jeffrey J.**
**Sadinsky and Mary E. Sadinsky Living Trust**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffrey J. Sadinsky and Mary E. Sadinsky, personally and as Trustees of The Jeffrey J. And Mary E. Sadinsky Living Trust dated December 22, 2004, <br><br> Plaintiff, <br><br> vs. <br><br> J.P. Morgan Chase dba Chase Bank and All Persons or Entities Unknown Claiming Any Legal or Equitable Right, Title, Estate, Lien or Interest in the Property Described in the Complaint Adverse to Plaintiffs' Title or any Cloud on Plaintiffs' Title Thereto, and DOES 1 through 25 inclusive, <br><br> Defendant. <br> _____ | Case No. 2:15-cv-01227 FMO(AGRx) <br><br> **Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Chase Bank's Motion to Dismiss Pursuant to F.R.C.P. Rule 12(b)(6)** <br><br> **Date: April 9, 2015** <br> **Time: 10 a.m.** <br> **Ctrm: 22** <br><br> **Judge:  Hon. Fernando M. Olguin** |

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................ -1-

II.     PLAINTIFFS HAVE SUFFICIENTLY PLED INTENTIONAL
        INFLICTION OF EMOTIONAL DISTRESS ...................... -2-

        A.      Incorporation by Reference Is A Well-Established Rule of Pleading
                .................................................... -2-

        B.      Plaintiffs Have Sufficiently Alleged Outrageous Conduct. ........ -3-

                1.      Case law holds that designating a loan in good standing for
                        foreclosure, inducing delinquency, rejecting a proffered lawful
                        payment, and using threats, violence, or abusive language is
                        outrageous and actionable. ........................... -5-

                2.      Other federal courts have held that Chase's impermissible way of
                        asserting rights can be outrageous enough to be actionable . . -7-

III.    NEGLIGENT MISREPRESENTATION SUFFICIENTLY PLED. ........ -8-

        A.      FAC Pleads Past/Existing Representations & Expert Opinions.  ... -8-

        B.      Plaintiffs Have Alleged Compensable Damages.  ............... -10-

IV.     THE FALSE IMPRISONMENT, DEFAMATION, AND NEGLIGENCE
        CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.
        .................................................... -12-

        A.      The Subject New Claims Relate Back to Original Complaint's Filing.
                .................................................... -12-

        B.      Equitable Estoppel and Equitable Tolling Also Bar Statute of Limitations
                Defenses. ............................................ -14-

                (i)     Equitable Tolling Applies to the FAC. ................... -14-

                (ii)    Equitable Estoppel Bars Chase's SOL Defenses .......... -16-

**V.    CHASE'S 12(B)(6) ON THE NEGLIGENCE CLAIM LACKS MERIT.**

 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -18-

    **A.**    **Chase Owes Borrowers a Duty of Care In Handling And Timely Processing/Preventing Purposeful Loss of Documents Etc.,** . . . . . . -18-

    **B.**    **The Biakanja Factors Weigh In Favor Of A Duty To Plaintiffs** . . . -20-

    **C.**    **Plaintiffs Have Alleged A Special Relationship Beyond the Domain of a Usual Money Lender.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-

    **D.**    **Chase's Claim That It Cannot Ascertain What Statutory Provisions Are Alleged      to Create A Legal Duty Is Disingenuous.** . . . . . . . . . . -23-

**VI.    CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -25-

**TABLE OF AUTHORITIES**

1

2      <u>**FEDERAL CASES**</u>

3      *Banks v. JPMorgan Chase Bank, N.A*

4            2014 WL 6476139*16-17 (C.D.Cal.,2014)  . . . . . . . . . . . . . . . . . -7-, -19-, -20-

5

6      *Duran v. Bank of America, N.A.*

7            2015 WL 794672* 10-11 (C.D.Cal.,2015)  . . . . . . . . . . . . . . . . . . . . . -19-, -20-

8

9      *Fullmer v. JPMorgan Chase Bank*

10            2010 WL 2511178 *7 (E.D.Cal.,2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

11

12     *Hild v. Bank of America,*

13            2015 WL 401316 *4-5(C.D.Cal.,2015) . . . . . . . . . . . . . . . . . . . . . -19--22-, -24-

14

15     *Johnson v. PNC Mortgage,* 2015 WL 662261 *3-4 (N.D.Cal., 2015)  . . -19-, -20-, -24-

16

17     *Martell v. Trilogy,* 872 F.2d (9th Cir. (Cal.),1989)  . . . . . . . . . . . . . . . . . . . . . . . . . -13-

18

19     *Medrano v. Caliber*, 2014 WL 7236925 *11(C.D. Cal.,2014)  . . . . . . . . . . . .  -19-, -20-

20

21     *Peay v. Midland*, 2010 WL 476677 *3  (E.D.Cal.,2010) . . . . . . . . . . . . . . . . . . . . . . -24-

22

23     *Penermon v. Wells Fargo Home Mortgage*

24            2014 WL 4273268 *5 (N.D.Cal. Aug.28, 2014)  . . . . . . . . . . . . . . . . . . . . . -20-

25

26     *Riese v. Chase* 2011 WL 4344590*4 (N.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . .  -3-, -7-

27

28

*Segura v. Wells Fargo Bank*

    **2014 WL 4798890 \*13-14 (C.D. Cal. 2014)** . . . . . . . . . . . . . . . . . . . . . **-20-, -24-**

*Shapiro v. Sage Point Lender Services*, **2014 WL 5419721\*10 (C.D.Cal.,2014)** . . **-24-**

*Smith v. JPMorgan Chase*, **2014 WL 6886030 \*3(C.D.Cal.,2014)** . . . . . . . . . . **-5-, -6-**

**<u>FEDERAL STATUTES</u>**

**F.R.C.P. Rule 15(c)(1)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-12-**

**<u>CALIFORNIA CASES</u>**

*Alcorn v. Anbro Engineering, Inc.* **2 Cal.3d (Cal. 1970)** . . . . . . . . . . . . . . . . . . . . . **-3-**

*Alvarez v. BAC Home Loans Servicing*

    **L.P., 228 Cal. App.4th (2014)** . . . . . . . . . . . . . . . . . . . . . . . . . **-18-, -20--24-**

*Amaral v. Cintas*,**163 Cal.App.4th (2008)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-13-**

*Berkley v. Dowds*,**152 Cal. App. 4th (2007)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-3-**

*Bily v. Arthur*,.**3 Cal.4th408 (1992)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-9-**

*Branch v. Homefed*, **6 Cal. App.4[th] (1992)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-11-**

*California Public Employees' Retirement System v. Moody's*

    **226 Cal. App. 4th (2014)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **-9-, -10-**

*Dettamanti v. Lompoc Union School Dist. of Santa Barbara County*

    143 Cal.App.2d (1956)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-

*Friedman v. Merck* **107 Cal. App. 4th (2003)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-

*Gagne v. Bertran* **(1954) 43 Cal.2d 275 P.2d 15** . . . . . . . . . . . . . . . . . . . . . . . . -9-, -10-

*Goldman v. Wilsey Foods*

    Inc. 216 Cal.App.3d (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

*Jolley v. Chase Home Fin., LLC*

    213 Cal.App.4th (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -19-

*Kajima Engineering v. City of Los Angeles*

    95 Cal. App. 4th (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*Lantzy v. Centex Homes*, **31 Cal.4th 363, 383 (2003)** . . . . . . . . . . . . . . . . . . . . -14--18-

*Pointe San Diego Residential Community, L.P. v. Procopio*

    195 Cal.App.4th (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-

*Ragland v. U.S. Bank*, **209 Cal.App.4th (2012)** . . . . . . . . . . . . . . . . . . . . . . -3-, -5--7-

*Trerice v. Blue Cross*, **209 Cal. App. 3d (1989)** . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-

*Union Oil v. Greka* **.165 Cal.App.4th 129, 138 (2008)** . . . . . . . . . . . . . . . . . . -14-, -16-

**CALIFORNIA STATUTES**

**California Civil Code § 2941** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-

**TREATISES**

**Black's Law Dictionary (9th ed. 2009)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

**Rylarsdaam et al., Cal. Practice Guide: Civil Procedure Before Trial**

      **(The Rutter Group 2014)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Memorandum of Points and Authorities**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Chase Bank's ("Chase" or "the Bank") FRCP Rule 12(b)(6) motion to dismiss lacks merit regarding even one of the Sadinskys' claims.

This is not a foreclosure or loan modification case (as Chase might be accustomed to removing to federal court). It involves a (late) middle-aged couple that tried to pay off *early* the mortgage on the home they had owned for over 20 years. Beginning in 2009, when Barack Obama was inaugurated as the 44th President, Plaintiffs Jeffrey and Mary Sadinsky began telling Chase they wanted to pay-off the remaining mortgage on the modest home in Northridge in which they had raised their kids. By the time President Obama was campaigning for reelection 3 ½ years later, Chase still had not provided the Sadinskys with any reconveyance papers – thereby frustrating the desired pay-off and forcing the Sadinskys to pay over $63,000 in unnecessary interest payments.

Even as President Obama's 2nd term now draws to a close, Chase continues to play hardball with the Sadinsky family home. Only after the Sadinskys sued Chase and took its default[1] did their re-conveyance papers materialize after 3 ½ years. Once its default was entered, Chase opted to do whatever it took to get (or force) the Sadinskys to lift that default. Indeed, within days of the default entry, Chase suddenly **refused** to take the Sadinskys' mortgage payments (sending their home to the *Foreclosure Department*) even though the Sadinskys had never missed or been late on a payment in 20+ years. Rightfully fearful that Chase would force a default on the mortgage, Mr. Sadinsky tried to make timely payment at his local branch – only to find that Chase refused to accept it there too. When Mr. Sadinsky tried to document the tender with a picture of his check and stub on the desk of a banking office, he was accosted by Bank employees, accused

---

[1] Chase glosses over this essential detail. Its papers state only that "Chase did not file a responsive pleading to the Complaint. *Rather,* Chase and Plaintiffs entered into multiple stipulations to extend the time for Plaintiffs to file a first amended complaint." (Motion, p. 2:21-23). In fact, Chase defaulted. Chase then lobbied Plaintiffs to set aside the default. Only when Plaintiffs agreed did the parties stipulate to extend the time to answer.

of having committed a federal crime before a bank full of customers, had a Chase bank manager forcibly hold his arm, was detained for hours and then ultimately forced to delete pictures from his phone.  Chase then refused to accept mortgage payments from the Sadinskys unless they were made with certified funds sent by certified mail out of state, even though the Sadinskys had never missed a payment in over 20 years, and kept their funds in a Chase bank account.  After such hardball tactics, Chase ultimately succeeded in persuading the Sadinskys to lift the default.   After Chase's multiple requests that Plaintiffs not file the amended complaint while the parties explored settlement, which were unproductive, Plaintiffs filed this First Amended Complaint ("FAC") January 20, 2015. Chase then removed.

## II.     PLAINTIFFS HAVE SUFFICIENTLY PLED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

A.     Incorporation by Reference Is A Well-Established Rule of Pleading

First, Chase argues that Plaintiffs' Intentional Infliction of Emotional Distress ("IIED") claim is "deficient" because "Plaintiffs do not specify the conduct on which their IIED claim is based.  (FAC ¶¶ 65-70).  This alone renders Plaintiffs claim deficient."  Chase's argument puts a matchstick to the established rules of pleading.

It is hornbook law that a complaint may incorporate by reference allegations set forth elsewhere in the Complaint. (*See* Rylarsdaam et al., Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 6:236, p.6-65).  Indeed, "Complaints generally incorporate prior allegations into subsequent causes of action." *Kajima Engineering v. City of Los Angeles*, 95 Cal. App. 4th 921, 932 (2002) (*citing* to Rutter that it is "common practice to incorporate by reference various allegations ... to save repetition"). Here, the IIED claim states that "Plaintiff incorporates paragraphs 1-64 herein as if set forth in full." (FAC  ¶65.  The incorporated paragraphs apprise Plaintiff of the "conduct on which their IIED claim is based," (Motion at 4:15-16), and the rules

1  of pleading do not require Plaintiffs to recopy every word again into each cause of

2  action.  Chase does  not assert viable grounds for a 12(b)(6).

3  B.    Plaintiffs Have Sufficiently Alleged Outrageous Conduct.

4       Plaintiffs have *more* than sufficiently pled the requite outrageous conduct for

5  their IIED claim.  Although Chase may fail to understand why it is outrageous for a bank

6  to send a *fully current* loan, held by an elderly couple on their 20+ year family home, to

7  the foreclosure department while actively refusing proffered mortgage payments, all in

8  order to cause Plaintiffs enough distress that they would lift a default rightfully entered

9  against Chase, this sort of conduct is precisely "so extreme as to exceed all bounds of

10  decency in a civilized community." *Ragland v. U.S. Bank,* 209 Cal.App.4th 182, 204

11  (2012) (stating "[w]hether conduct is outrageous is usually a question of fact.")

12       Indeed, "A reasonable trier of fact could conclude these allegations, if proven,

13  constitute outrageous conduct." *See Riese v. Chase* 2011 WL 4344590*4 (N.D. Cal.

14  2011) (denying Chase's 12(b)(6) motion against an IIED claim whereas "JPMorgan did

15  not have a good faith belief in the existence of the right asserted" in beginning

16  "foreclosure proceedings based on its contention that Loan…was delinquent when in

17  fact JPMorgan had acknowledged the loan was paid off.").  In fact, 'Where reasonable

18  men may differ, it is for the jury, subject to the control of the court, to determine

19  whether, in the particular case, the conduct has been sufficiently extreme and outrageous

20  to result in liability."  *Alcorn v. Anbro Engineering, Inc.* 2 Cal.3d 493, 499 (Cal. 1970);

21  *Berkley v. Dowds,* 152 Cal. App. 4th 518, 534 (2007).

22       Here the FAC's incorporated paragraphs plead the following outrageous conduct:

23       "As Chase obstructed the Sadinsky's ability to pay their mortgage,  and inflicted

24  additional stress and humiliation on them, Chase's attorneys conveniently tried to

25  properly motivate the Sadinskys into setting aside the default against Chase.  In the end,

26  the default would indeed be set aside." (FAC ¶ 63).  More specifically, the FAC alleges

27  that on January 2, 2013 "the Court granted the Sadinskys' request for entry of default

28  and entered default against Chase."  (FAC ¶47).  Within days "in January 2013 *after* the

default had been entered against Chase" the bank began to refuse to accept the Sadinskys' mortgage payments, sending their loan to the Foreclosure Department (FAC ¶54), even though "the Sadinskys had never missed or been late on a mortgage payment in their lives." (FAC ¶55). The Sadinskys "were shocked and petrified about what was going to happen to them next.  They could lose their house and there appeared to be nothing they could do about it."  (FAC ¶55). Mr. Sadinsky went into a Chase branch to make payment on the mortgage loan as the deadline fast approached: "fearful for his home and credit rating, Mr. Sadinsky tried to leave the check and mortgage stub on Tony's desk" but Chase refused to accept the proffered payment. Mr. Sadinsky then "took two photographs of the check and payment coupon on Tony's desk as proof that he had indeed tendered payment." (FAC ¶58).  However, Branch Manager "Dennis Hum ran out and represented himself as security for Chase…He told Mr. Sadinsky, in the presence of other customers, thereby humiliating him, that Mr. Sadinsky had violated federal law – and then grabbed hold of Mr. Sadinsky's arm to get him to delete the photos on the handheld device Mr. Sadinsky was holding.  Mr. Hum detained Mr. Sadinsky by threatening to call the FBI to report that Mr. Sadinsky had committed a federal crime unless Mr. Sadinsky destroyed the photographs he had taken with his phone of his own check and mortgage coupon on Tony's desk.  Mr. Hum then refused to allow Mr. Sadinsky to leave the Bank until Mr. Sadinsky was forced to and did delete the pictures from his phone device…Mr. Sadinsky went home to his apartment in Van Nuys and vomited.  The Incident stuck with him, as he began to have recurring fears and visions that Chase would cause him to be arrested and carted off to prison.  His mental health deteriorated.  He lost 26 pounds in a matter of months."  (FAC ¶ 60)… "The stress of the situation…put the nail in the coffin on the Sadinskys' marriage." (FAC ¶64).   No outrageous conduct?  A jury could disagree (as have courts; see below).

1.   <u>Case law holds that designating a loan in good standing for foreclosure,</u>
     <u>inducing delinquency, rejecting a proffered lawful payment, and using</u>
     <u>threats, violence, or abusive language is outrageous and actionable.</u>

The sole case Chase cites in support of its claim that the FAC's conduct is not outrageous enough is *Trerice v. Blue Cross*, 209 Cal. App. 3d 878, 883 (1989), which Chase claims establishes that "the assertion of a legal right in pursuit of one's economic interest does not qualify as outrageous conduct."  In reality, *Trerice* does not even involve banking law, where the courts have made clear that Chase (and other banks) lack carte blanche to do whatever it wills in pursuit of its so-called "economic interest."  *See e.g.*, *Ragland v. U.S. Bank*, 209 Cal. App. 4th 182, 205 (2012) (holding that a bank did not have the right to protect its economic interests and its conduct was "so extreme as to exceed all bounds of decency in our society" because only a bank that "proceeded with a lawful foreclosure after…default[]…had a legal right to protect its economic interests.").

The law should come as no surprise to Chase. Just last year, in *Smith v. JPMorgan Chase,* 2014 WL 6886030 *3(C.D.Cal.,2014), where its current lead counsel David Piper of Keesal, Young & Logan defended Chase Bank, the Honorable Judge R. Gary Klausner, denied a Chase 12(b)(6) motion on an IIED claim.  Judge Klausner ruled that an ***attempt*** at "improper foreclosure of a home can rise to the level of extreme and outrageous conduct."  Plaintiffs in the *Smith* Case, like the Sadinskys,"were not in default on their mortgage," but Chase targeted them for foreclosure anyway, even though the Bank ultimately did not follow through with any  foreclosure (just as they didn't with the Sadinskys). *Id*. at *4. The *Smith* Court denied Chase's 12(b)(6), finding that though "no foreclosure took place" even so"[c]ommon sense dictates that home foreclosure is a terrible event and likely to be fraught with unique emotions and angst…By alleging that Defendant continued to foreclose on Plaintiffs' home despite Defendant's knowledge that foreclosure was improper, Plaintiff has sufficiently pled that Defendant acted with reckless disregard of the probability of causing **emotional distress**."*See Smith, supra,* 2014 WL 6886030 at *4.

Like *Smith*, the FAC here alleges that Chase sent the Sadinskys to the foreclosure department even though they "were not in default on their mortgage" and "despite Defendant's knowledge that foreclosure was improper." *See Smith, supra,* 2014 WL 6886030 at *4. Also like *Smith*, Chase did not follow through on the foreclosure on the Sadinsky home, reflecting that it is not the completion of the foreclosure that becomes actionable but the threat and resulting stress of an unjustified foreclosure. *See Id.* at *4.

But far worse than the Smiths' facts, the FAC also alleges that Chase actively **refused** to take mortgage payments from the Sadinskys, thereby trying to *cause* a default. Why? Chase wanted to cause the Sadinskys so much emotional distress that they would agree to lift their entry of default against Chase. (FAC ¶63). This culminated with a cataclysmic altercation at a branch office when Mr. Sadinsky tried to make and document his tender of the mortgage payment, but Chase "rejected a proffered, lawful payment" – something else the Courts have made clear is sufficient to plead an IIED claim. In *Ragland v. U.S. Bank*, 209 Cal. App.4th 182, 204 (2012), the Court wrote that a "claim that Defendant induced her delinquency, or rejected a proffered, lawful payment that would have made her current on her payments" would be sufficient to "plead extreme or outrageous conduct." The Court asserted that even where "this alleged conduct *was not* accompanied with threats, violence, or abusive language," it was already "so extreme as to exceed all bounds of decency in our society,'"and, thus, sufficient to support an intentional infliction of emotional distress claim. *Id.* at 205. Here, the Sadinskys have plead more: Chase's rejection of a proffered payment was actually "accompanied with threats, violence, or abusive language," at the branch. (FAC ¶¶58-60). If lesser conduct is actionable, It goes without saying that the Plaintiffs have actually pled a far more extreme and outrageous set of facts to that the Court's have already recognized as sufficient to plead a IIED claim!

But Chase already knows all this. Recently, the Central District, already told Chase that if a Plaintiff pled "a claim that Defendant induced her delinquency, or rejected a proffered, lawful payment that would have made her current on her payments"

this would be sufficient to "plead extreme or outrageous conduct." *See Banks v. JPMorgan Chase Bank, N.A.*2014 WL 6476139*16-17 (C.D.Cal.,2014) (citing favorably to *Ragland* that if a Plaintiff had such pled facts it would have been sufficient to plead extreme or outrageous conduct).Thus, the Sadinskys have also pled enough for their IIED claim, when they alleged that Chase attempted to induce their delinquency, and repeatedly rejected proffered payments, while also even using "threats, violence and abusive language." (FAC ¶¶58-60).

2.  Other federal courts have held that Chase's impermissible way of asserting rights can be outrageous enough to be actionable

In another Chase lawsuit in which "JPMorgan's motion to dismiss the IIED claim is denied" the district court held that in beginning foreclosure, Chase "was required to assert its legal rights 'in a permissible way and with a good faith belief in the existence of the rights asserted.'" *Riese v. Chase,*2011 WL 4344590 *4 (N.D. Cal. 2014). In *Riese*, whereas JPMorgan "began foreclosure proceedings based on its contention that Loan # 4680 was delinquent when in fact JPMorgan had acknowledged the loan was paid off," it therefore "did not have a good faith belief in the existence of the right asserted and asserted its right in an impermissible way. A reasonable jury could conclude these allegations, if proven, constitute outrageous conduct. JPMorgan's motion to dismiss the IIED claim is denied." *Id.*  Similarly, here the FAC alleges that Chase sent the Sadinsky's loan to its foreclosure department and began treating the Sadinskys like they had been in default (requiring payment in a form only required upon default) *even though* Chase "did not have a good faith belief in the existence" of the right to foreclose, knowing that the loan was fully paid up for the last 20 years.  Chase also had "asserted its right in an impermissible way" in that Chase had no right to refuse to accept payments on a loan that was fully paid up to date, or force Mr. Sadinsky to delete pictures showing proof of tender.  *See Id.*  Chase also did not assert its rights in a permissible way when it later demanded that mortgage payments be withdrawn from the Sadinskys' Chase account, made into a *certified check* and delivered by *certified mail* to an *out-of-state*

*address* despite knowing full well that the money for the payment came from a Chase account, there had never been a delinquency or bounced check in 20 years, and the Deed of Trust says that only if a check is "returned to lender unpaid, Lender may require that any or all subsequent payment due…be made in…certified check."  (FAC ¶¶61-62). *Id.* The IIED claim is more than sufficiently pled.

## III.  NEGLIGENT MISREPRESENTATION SUFFICIENTLY PLED.

A.    FAC Pleads Past/Existing Representations & Expert Opinions.

Chase argues that the misrepresentation claim fails because "representations pled in the FAC constitute nothing more than a statement as to future action by a third party, namely the FBI.  As such, the representation is deemed an opinion, which does not support a negligence claim."(Motion at 5:11-1)

Here the FAC asserts representations as to past and existing fact:  "Dennis Hum…falsely represented…that Mr. Sadinsky had committed a crime." (FAC ¶84)

This allegation plainly pleads a representation as to "past or existing fact;' it alleges a crime having **already** occurred (the pictures having already been taken).  The incorporated paragraphs further detail (FAC ¶83), "Mr. Hum told Mr. Sadinsky…that Mr. Sadinsky had violated federal law" after he took "photographs with his phone of his own check and mortgage coupon on Tony's desk."  (FAC ¶59).  Accordingly, the Negligent Misrepresentation clair cannot be subject to a 12(b)(6).

The second representation Chase singles out does not work any better:

"Dennis Hum…falsely represented…that Mr Sadinsky…was  subject to immediate detention and arrest by the FBI."

This representation asserts "***immediate*** detention and arrest," not a future detention or arrest.  According to *Black's Law Dictionary*, the term "immediate" means "Occurring without delay; instant."  Black's Law Dictionary (9th ed. 2009).  As the incorporated paragraphs further outline (FAC ¶83), Mr. Hum "represented himself as the security for Chase" and in fact "detained Mr. Sadinsky." (FAC ¶59).

Contrary to Chase's assertion that "the expression of an opinion cannot support a misrepresentation claim" here, the California Supreme Court has long held otherwise in similar cases.  In *Bily v. Arthur,*.3 Cal.4th 370, 408 (1992), while finding that opinion statements are actionable as negligent misrepresentation, the court held that "Under certain circumstances, expressions of professional opinion are treated as representations of fact. When a statement, although in the form of an opinion, is 'not a casual expression of belief' but a deliberate affirmation of the matters stated,' it may be regarded as a positive assertion of fact. (*Gagne v. Bertran* (1954) 43 Cal.2d 481, 489, 275 P.2d 15.) Moreover, when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact."

Similarly, in *Gagne, supra*, 43 Cal.2d at488, the defendant contended, like Chase does here, that his statement was "not a misrepresentation of fact, but was only a statement of opinion and thus cannot form the basis of an action for deceit."  The California Supreme Court disagreed.  It held that "He did not give his statement in the form of an opinion but as a representation of fact," and "His assertion was not a casual expression of belief, but was a deliberate affirmation of the matters stated."  *Id*. at 489. In addition, the court stressed that "even if defendant's statement was an opinion…Defendant held himself out as an expert…and his unequivocal statement necessarily implied that he knew facts that justified his statement." *See also California Public Employees' Retirement System v. Moody's*, 226 Cal. App. 4th 643, 664 (2014) (finding ratings were actionable as negligent misrepresentation as "professional opinions" or "deliberate affirmations of fact" rather than non-actionable predictions of future).

Here the FAC avers that Mr. Hum "did not give his statement in the form of an opinion but as a representation of fact."  *CF Gagne, supra*, 43 Cal.2d at 488.  Mr. Hum forcefully stated that "Mr. Sadinsky had committed a crime," and "that Mr

Sadinsky…was subject to immediate detention and arrest by the FBI."(FAC ¶84).   To borrow a California Supreme Court characterization:  "His assertion was not a casual expression of belief, but was a deliberate affirmation of the matters stated."   *Id*. at 489; *Bily, supra*, 3 Cal.4th at 408. Moreover, the FAC also alleges that Mr. Hum "identified himself as both Branch Manager and Security Personnel for the Bank, making it appear as if he was an expert in banking law and responsible for ensuring compliance with said banking laws" (FAC ¶¶ 59, 87) and he "specifically referenced his personal contact with the FBI as the federal agency he'd call, thus, further reinforcing the appearance that he was vested with authority as a Branch Manager/Security Personnel, had knowledge of banking laws and crimes, and had direct contact with the FBI." (FAC ¶88).  Thus, the FAC sufficiently pleads that Mr. Hum "possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise" *Id*. This is to say that  "even if defendant's statement was an opinion…Defendant held himself out as an expert…and his unequivocal statement necessarily implied that he knew facts that justified his statement." *Gagne, supra*, 43 Cal.2d at 488.  Mr. Hum's representations are therefore actionable as negligent misrepresentation as "professional opinions" or "deliberate affirmations of fact." *See California Public, supra,* 226 Cal. App. 4th at664.

B.      Plaintiffs Have Alleged Compensable Damages.

Chase also attacks the misrepresentation claims by arguing that it cannot ascertain any alleged facts showing "resulting damage" (Motion, p. 6:1-2)– but this is a meritless red herring.  The FAC states that Mr. Hum's misrepresentations (about Mr. Sadinsky committing a crime by taking pictures) caused Mr. Sadinsky to **delete** photographs (his property) from his private phone.  (FAC ¶88; ¶59). Thus, Mr. Sadinsky pled facts showing damage due to reliance on the misrepresentation:  deprivation of his pictures and *a fortiori* a resulting loss.  This alone is sufficient to allege compensable damage and therefore, Mr. Sadinsky has stated a claim for negligent misrepresentation.  Knowing

this it is disingenuous implausible to claim that the *only* damage alleged in the FAC is emotional distress, and therefore a 12(b)(6) must be granted on such grounds, as Chase has attempted to do.  Defendant cannot cherry-pick from the paragraphs and ignore the remainder, as if each paragraph is its own atomized complaint. Chase having seen and referenced ¶89 could not have overlooked FAC ¶88, where Plaintiffs pled damage as to physical harm consisting of property damage to the deleted pictures from Mr. Sadinsky's private phone.(FAC ¶88).

Third, the case law that Chase cites, such as *Branch v. Homefed*, 6 Cal. App.4[th] 793, 798 (1992), pertains to a plaintiff "incurring **neither** physical impact **nor physical damage**, and whose loss is **solely** economic, is entitled neither to punitive damages nor to a recovery for emotional distress."  As further clarified by the more recent holding in *Friedman v. Merck*, also cited by Chase, this references "a cause of action for negligent misrepresentation involving a risk of emotional harm **alone**." 107 Cal. App. 4th 454, 484 (2003).  Thus, only where "the direct result of defendant's alleged wrongdoing was emotional rather than physical harm," as opposed to both, would there be a potential problem.  *Id* at 487. As noted by *Friedman's* reference to the Restatement of Torts and other jurisdictions, however, "Physical harm is defined as encompassing personal injury or property damage, not emotional injury." *Id*. at 486.  Here, the FAC does not allege merely emotional harm; it pleads "physical harm encompassing…property damage," *Id.,* in the form of the deleted pictures. Because the Sadinskys alleged physical harm in the form of property damage, they have properly alleged facts entitling them to recover emotional distress and compensatory damages for the loss of the pictures themselves. *See Branch, supra*, 6 Cal. App.4[th] at 798.

/ / /

IV.   **THE FALSE IMPRISONMENT, DEFAMATION, AND NEGLIGENCE CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS.**

A.   The Subject New Claims Relate Back to Original Complaint's Filing.

Chase incorrectly argues that statute of limitations bars the Sadinskys' causes of action for false imprisonment, defamation and negligence because the FAC relates back to the filing of the original complaint.   The Sadinskys filed their complaint in September 2012 against the exact same Defendant (Chase Bank), and its allegations pertained to the same general set of facts as the FAC:  "Chase has been unable or unwilling to produce the original trust deed or indeed any trust deed recorded against the property or encumbering the property," on the Sadinskys' Lasaine Avenue Home.  (Original Complaint ¶¶5-6). It is rather incontrovertible that these are the same facts underlying the claims in the FAC.  (¶¶FAC 9 - 46).

Rule 15(c)(1) states that "An amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."

It is settled in California that "An amended complaint relates back to an earlier complaint if it is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action." *Pointe San Diego Residential Community, L.P. v. Procopio*, 195 Cal.App.4th 265, 276-277(2011) (finding amended complaint related back to the original complaint, even where original complaint was "a form complaint, and the plaintiffs merely "checked the box,"it "did not detail the specifics of the claim," it was ""bare bones" and "may not have withstood a demurrer on grounds of uncertainty" if one had been brought originally).Thus, so long as the FAC "1) rests on the same general set of facts; (2) involves the same injury; and (3) refers to the same instrumentality," it relates back to the original complaint for statute of limitations purposes. *Id*, at 276.

Even though an amended complaint "specifies…causes of action that the original complaint had not…the 'relation back' doctrine focuses on factual similarity rather than rights or obligations arising from the facts, and permits added causes of action to relate back to the initial complaint so long as they arise factually from the same injury," even if the new causes of action are statutory whereas previous ones were purely common law. *Goldman v. Wilsey Foods*, Inc. 216 Cal. App.3d 1085, 1094-1095 (1989).

Thus,"if an amendment is sought after the statute of limitations has run, the amended complaint will be deemed filed as of the date of the original complaint provided recovery is sought in both pleadings on the same general set of facts… it is the sameness of the facts rather than the rights or obligations arising from those facts that is determinative." *Amaral v. Cintas*,163 Cal.App.4th 1157, 1199-1200 (2008).  Likewise, "an amendment seeking new damages relates back to the original complaint if such damages resulted from the same operative facts *i.e.*, the same misconduct and the same injury previously complained of." *Id.* at 1200.

Finally, even applying FRCP 15( c)(1)(B) to the FAC here the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." As the 9th Circuit has long reinforced where the "original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question," then the amended complaint relates back for purposes of the statute of limitations. *Martell v. Trilogy,* 872 F.2d 322, 325 (9th Cir. (Cal.),1989) (overruling district court dismissal of amended complaint based on SOL where the original and amended pleadings "are transactionally related"  and have  "a common core of operative facts sufficient to impart fair notice of the transaction, occurrence, or conduct called into question."). *Id* at 327.

Here, the Sadinskys' FAC and complaint are transactionally related and have common operative facts:  Chase's failure to find the deed and note on their home.  The fact that the FAC asserts new legal theories or damages is irrelevant; Chase had more

than fair notice as to the "whole transaction" that was being called into question from Day 1, namely its inability to find re-conveyance papers for the Sadinskys' Lasaine Home. *See Id* at *326.*

For such reason, Chase's statute of limitation defense lacks merit.

B.   Equitable Estoppel and Equitable Tolling Also Bar Statute of Limitations Defenses.

Chase's statute of limitation defense is also barred by the doctrines of Equitable Estoppel and Equitable Tolling because a defendant "may not assert a statute of limitations defense where their conduct caused the untimely filing of the action." *Union Oil v. Greka*.165 Cal.App.4th 129, 138 (2008). As the California Supreme Court espoused in *Lantzy v. Centex Homes*, 31 Cal.4th 363, 383 (2003):

"Equitable tolling and equitable estoppel are distinct doctrines. Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended.... Equitable estoppel, however, ... comes into play only after the limitations period has run and addresses ... the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life .from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice.' "

Both these doctrine work against Chase's SOL defense here.

(i)   **Equitable Tolling Applies to the FAC.**

As the California Supreme Court has recognized, equitable tolling "is a judge-made doctrine 'which operates independently of the literal wording of the Code of Civil Procedure' to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy, supra*, 31 Cal. 4th at370. Consequently,

the "effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred. *Id.* at 370-371.

As the FAC contends, the original complaint was filed September 26, 2012. (FAC ¶46). Chase failed to respond after being properly served. As a result, on "January 2, 2013, the Court granted the Sadinsky's request for entry of default and entered default against Chase." (FAC ¶47). Plaintiffs agreed to set aside default for Defendants as of November 14, 2013. The time elapsed – about 14 months -- as a result of Chase's neglect to answer the Complaint and consequent default, is purely Chase's fault, and it therefore cannot "plead the very delay caused by [its] course of conduct as a defense to the action when brought.'" *Lantzy*, *supra*, 31 Cal. 4th at 383. It should be stressed that *as a result of Chase's default*, the Sadinskys had no logical reason to amend a complaint during a default, when (1) Chase had not responded to their original complaint in the first place, and (2) the Court already entered a default against Chase on that complaint seeking "damages in excess of $700,000." (Original Complaint ¶16).

Within days of the default entry, Chase began to refuse to accept the Sadinskys' mortgage payments and sent them to the foreclosure department. (FAC ¶¶53-54). Days later on February 5, 2013, *when the default was still in place*, Mr. Sadinsky went to the bank to make payment and was accosted by Mr. Hum and subjected to false imprisonment and defamation, *etc*.,  (FAC ¶¶56-60).  All these facts, which appear in the FAC, however, transpired *during* the default period  when Plaintiffs had no conceivable reason to file an amended pleading because the Court had already awarded them a default against Chase for its failure to respond to the original complaint.

It therefore was Chase's default that interrupted and suspended the statute of limitations for the period from September 26, 2012 through November 14, 2013, when the default was set aside by stipulation, amounting to an approximate 14 month tolling.

Equitable tolling operates "to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." *Lantzy, supra,*, 31 Cal.4th at 370. In other words, after causing a default by ignoring a complaint, Chase cannot later profit on its default by claiming a statute of limitations defense for a delay *caused solely by its own neglect*. Indeed, whereas Sadinskys' agreeing to set aside the default as a great benefit to Chase, there would be no "fundamental practicality and fairness" in punishing Plaintiffs for their graciousness in giving Chase a 2nd bite at the apple (for which they now get a slap in the face). Consequently, the 14 month period "is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred."*Id.* at 370-371.

Chase's arguments that the limitation periods for (1) the False Imprisonment and (2) the Defamation claims were both **1 month and 19 days** past the **one year** statute of limitations for each such cause of action (Motion at 6:15-16, & 7:3-4) thus, fail whereas the statute of limitations is equitably tolled **for about 14 months** – to November 14, 2013, which is *less than one year* from March 24, 2014 -- and thus, well within the statutory period for each cause of action (by a whopping 6 months!). *See Id*. As to the negligence claim (Motion 9:20-21 & 10:5-7), because it has a two year SOL, it is well within the limitations period, whereas the statute of limitations is equitably tolled **for about 14 months** – to November 14, 2013, which is *less than two years* from March 24, 2014 (by 1 year and 6 months).[1]

(ii)   **Equitable Estoppel Bars Chase's SOL Defenses**

California law provides that "Defendants who induce plaintiffs not to sue pending settlement, as here, may not assert a statute of limitations defense where their conduct caused the untimely filing of the action." *Union Oil v. Greka,*165 Cal. App. 4th 129, 138

---

[1]   Chase's argument on the negligence claim is also a head-scratcher, as it inexplicably cherry-picks out one token letter (dated May 14, 2011) that was made *before* the original complaint was filed and therefore is part of the underlying facts upon which Plaintiffs sought relief in their first Complaint of September 26, 2012. (Original Complaint ¶¶5-6).

(2008).  In fact, "the limitations period was tolled" when a Defendant "requested settlement negotiations." *Id*.  In addition, a Defendant is "also estopped from asserting the statute of limitations as a defense" where "It urged [Plaintiffs] to suspend legal actions [and] They did." *Id*. The California Supreme Court has long "invoke[d] the venerable principle that '[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.'" *Lantzy*, *supra*, 31 Cal.4th at 383. To create an equitable estoppel "it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss….It is well settled that a person by his conduct may be estopped to rely upon these defenses. Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." *Dettamanti v. Lompoc Union School Dist. of Santa Barbara County* 143 Cal.App.2d 715, 720 (1956).

As the FAC provides, once Chase coerced Plaintiffs into agreeing to set aside the default as of November 14, 2013, it then induced Plaintiffs ***not to file*** an amended complaint again and again as it claimed to be investigating and attempting to work out a settlement with Plaintiffs.  [See Cowan Declaration re Judicial Notice]  In fact, Chase induced Plaintiffs to agree to ***five*** stipulated orders extending time to file the amended complaint.  As documented in various stipulated orders over a long period of time:

"Plaintiffs prepared their amended complaint and provided a copy of it to Defendant.  Defendant has renewed settlement talks and is exploring creative settlement options. ***"Defendant has suggested*** and Plaintiffs agree, ***that settlement talks could be more productive if they can occur before an amended complaint is filed*.**" *See R*JN March 13, 2014 Stipulation and Order to Extend Time to File Amended and Supplemental Complaint. Likewise, in a June 14 Stipulation and Order, Chase offered

excuses of weeks long medical emergencies. *See R*JN June 2014 Stipulation and Order to Extend Time to File Amended and Supplemental Complaint.

Equitable estoppel therefore bars Chase from asserting the statute of limitations against the defamation, false imprisonment and negligence claims. Because it was Chase's failure to answer the first complaint that caused the subject delay in filing the FAC, and given later requests that the FAC not be filed during settlement negotiations; whereas the "delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." *Lantzy, supra*, 31 Cal.4th at 384.

## V. CHASE'S 12(B)(6) ON THE NEGLIGENCE CLAIM LACKS MERIT.

A.    Chase Owes Borrowers a Duty of Care In Handling And Timely
        Processing/Preventing Purposeful Loss of Documents Etc.,

Chase bases its challenge to the negligence claim on the grounds that "it is well-established that under California law 'a financial institution owes no duty of care to a borrower." But the cases it cites are in the foreclosure/loan modification context (*i.e., Nymark v. Heart*, 231 Cal. App. 3d 1089 (foreclosure); *Palestini v. Homecomings*, (foreclosure) and *Lindsay v. America's* (loan modification). (Motion7:13-16).

Chase's analysis lacks merit for several reasons. First, its authorities are inapposite because this is not a foreclosure/loan modification lawsuit. The Sadinskys neither defaulted on their mortgage nor applied for a loan modification. [Accordingly, if anything a lender (Chase) should owe more, not less of, a duty towards them.]

Second, even in foreclosure/loan modification, there is far from a "well-established" rule against a duty. California decisions more recent than *Nymark* have repeatedly held that lenders *do* owe a duty of care to borrowers in carefully handling their loan documents and giving correct documentation, as well as timely processing the documents and not losing them. *See, e.g.,Alvarez v. BAC Home Loans Servicing*, L.P., 228 Cal. App.4th 941, 948–51, (2014) (imposing a duty of care on a loan servicer and holding that because a financial institution agreed to consider modification of a plaintiffs

loans it owed a duty of reasonable care in processing the modification); *Jolley v. Chase Home Fin., LLC* 213 Cal.App.4th 872, 905–907 (2013) (holding that a lender owed a duty of care on a construction loan);*Duran v. Bank of America, N.A.*2015 WL 794672* 10-11 (C.D.Cal.,2015) (*citing Alvarez* and *Jolley* in denying 12(b)(6) brought by servicer against negligence claim based on bank having no duty of care, whereas court found servicer sufficiently pled that servicer "owed Plaintiffs a duty of care in considering their modification" and breached that duty when it failed to provide correct documentation and otherwise was not"careful in carrying out its modification program*."); Hild v. Bank of America,*2015 WL 401316 *4-5(C.D.Cal.,2015)(denying servicer's 12(b)(6) against "negligent loan administration claim" whereas "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower" and citing *Alvarez*, servicer "owed Plaintiffs a duty to exercise reasonable care in reviewing their loan modification application."); *Johnson v. PNC Mortgage,* 2015 WL 662261 *3-4 (N.D.Cal., 2015) (denying 12(b)(6) and holding that "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower" as reflected by *Alvarez*, once bank offers "an opportunity to modify their loan, it owed them a duty to handle their application with ordinary care."); *Medrano v. Caliber*, 2014 WL 7236925 *11(C.D. Cal.,2014) (denying servicer's 12(b)(6) on negligence claim and holding servicer's *Nymark* argument that a financial institution owes no duty of care is"better taken, historically," whereas in light of *Alvarez* more "Recently…the tide has turned. The California courts of appeal now recognize that lenders cannot offer modifications, generally, and then claim they have no duty to avoid processing the applications for those modifications in a slipshod manner."); *Banks v. JPMorgan Chase Bank,* 2014 WL 6476139*12 (C.D. Cal.,2014) (rejecting Chase's 12(b)(6) argument that "there is no common law duty of care in the traditional lender/servicer-borrower relationship" on grounds that"servicer conduct during the modification negotiation process may create a special relationship and a resulting duty of care" and plaintiff sufficiently "alleged that Defendant breached the duty through its failure timely to process the documents and its

purposeful loss of the documents."); *Segura v. Wells Fargo Bank*, 2014 WL 4798890 *13-14 (C.D. Cal. 2014) (denying 12(b)(6) dismissal of negligence claim whereas "*Alvarez*, *Jolley*, and the statutory scheme established by HBOR…the Court determines that having offered Plaintiffs an opportunity to apply for a modification, Wells Fargo owed them a duty of reasonable care in considering their application."); *Penermon v. Wells Fargo Home Mortgage*, 2014 WL 4273268 *5 (N.D.Cal. Aug.28, 2014) (denying 12(b)(6) motion because although bank owed no inherent duty to give a modification, "once [defendant] provided Plaintiff with the loan modification application and asked her to submit supporting documentation, it owed her a duty to process the completed application once it was submitted"),

In other words, Chase's off-hand assertion is wrong.  Considerable case law establishes that once a bank/servicer enters into a relationship with a borrower, the bank/servicer acquires a duty to process and handle the borrowers documents with ordinary care or else be liable in negligence.

Here, the FAC alleged that Chase owed the Sadinsky a duty to (i) find and turn over their re-conveyance papers for their desired pay-off of the loan, including as was their duty under statutory law per California Civil Code § 2941, (FAC ¶139); (ii) to "timely and properly respond to Plaintiffs multiple Qualified Written Requests" under RESPA, (FAC ¶140)) – neither one of which occurred.  As in *Banks supra,* 2014 WL 6476139 *12, these facts sufficiently allege "that Defendant breached the duty through its failure timely to process the documents and its purposeful loss of the documents" and also as in *Duran, supra*, 2015 WL 794672 *11, that defendant breached that duty when it failed to provide correct documentation."  A bank has a duty to properly process borrowers' applications and documents.  *See Alvarez, supra*, 228 Cal. App.4th at 948–51; *Hild, supra,,* 2015 WL 401316 at *4-5; *Johnson, supra,* 2015 WL 662261 *3-4; *Medrano v. Caliber*, 2014 WL 7236925 *11.

B.   The Biakanja Factors Weigh In Favor Of A Duty To Plaintiffs

As the *Alvarez* Court also explained "' Nymark does not support the sweeping

conclusion that a lender never owes a duty of care to a borrower. Rather, the Nymark court explained that the question of whether a lender owes such a duty requires "the balancing of the ' Biakanja factors."  The Biakanja factors are "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." *Alvarez, supra,*228 Cal.App.4th at 946.  The Alvarez court proceeded to weigh these factors in ultimately concluding that Plaintiffs sufficiently alleged a breach of the duty of care in the mishandling of their applications.

In the Sadinskys' case these factors all also establish a duty of care to them as borrowers.   Just as the *Alvarez* court said that a transaction involving a loan modification application was certainly "intended to affect the plaintiffs,"*Id.* at 948, a transaction involving a loan payoff must affect the plaintiffs, as otherwise they are left paying unnecessary interest on a loan they don't need.  Second, as in *Alvarez*, "it was entirely foreseeable that failing to timely and carefully process" the reconveyance papers"could result in significant harm to the applicants," namely, their continue payment of interest for no reason. *Id*. With respect to the third factor, "the degree of certainty that the plaintiff suffered injury," the facts in the FAC show that the Sadinskys have paid at least $63,000 in interest as a result of not being able to pay off the loan, paid costs and expenses, as well had severe emotional distress." (FAC ¶¶ 25-26, 52, 54, 57-58 *etc…*)  *See Hild, supra,* 2015 WL 401316 *5 (plaintiffs alleged a duty of care and met the injury prong by alleging "that they have incurred costs and expenses, 'have continued to make exorbitant [mortgage] payments, and have suffered severe emotional distress').

On the 4th factor, concerning "the closeness of the connection between the defendant's conduct and the injury suffered" here far more than even in *Alvarez* there was an absolute guarantee that the pay-off would have been made if not but for Chase's conduct, thus "the mishandling of the documents deprived Plaintiff of the possibility of

obtaining the requested relief.' " *Id*. at 949.  Fifth, as to "the moral blame attached to the defendant's conduct," as the Alvarez court persuasively concluded "[t]he borrower's lack of bargaining power coupled with conflicts of interest that exist in the modern loan servicing industry provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers." *Alvarez, supra*, 228 Cal.App.4th at 949.  In the Sadinskys case, Chase held all of the power, which is why it could continue looking for the pay-off documents indefinitely while collecting the interest with complete impunity, such that just as in *Alvarez* there inheres "a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers.  *Id*.   The moral blame is compounded where a defendant is alleged to have violated law, as the FAC indeed asserts against Chase via Civil Code Section 2941 and RESPA, 12 U.S.C. § 2605(i) *et seq.,*(FAC ¶¶139-140).  *Id* at 949-950; *see also Hild, supra*, 2015 WL 401316 *5. Last, "the policy of preventing future harm," also mitigates in Plaintiffs favor whereas legislation provides that failure to meet a duty to timely and properly furnish re-conveyance papers is punishable by an award of "all damages which that person may sustain by reason of the violation plus $500 penalty, among other fees" (FAC ¶ 139).  *See Alvarez, supra*, 228 Cal.App.4th at 950, *Hild, supra*, 2015 WL 401316 *5.  Thus, as both *Alvarez* and *Hild* concluded "the above factors indicate that a duty of care is appropriate" thus, Chase"owed Plaintiffs a duty to exercise reasonable care." *Hild, supra*, 2015 WL 401316at *6.

C.   Plaintiffs Have Alleged A Special Relationship Beyond the Domain of a Usual Money Lender.

In addition to meeting the *Biakanja* factors, the FAC shows a duty pursuant to a special relationship no different than the one the courts have recognized exist between a bank/servicer and a borrower once a loan modification process is instituted.   Chase solicited the Sadinskys to visit a branch (FAC ¶10), provided information about a payoff, and discussed what documents Chase had to provide in return for the payoff.  (FAC ¶12-13). Although Chase claimed for 3.5 years that it could not locate the reconveyance

papers, and profited by collecting $63,000 in interest from the Sadinskys (FAC ¶52), it "magically" found the proper reconveyance papers.  (FAC ¶ 48).  The FAC also alleges how Chase conditioned "permitting access and viewing such documents, of course, Chase sought the Sadinskys agreement not to file a motion for default judgment and to set aside the default."  (FAC ¶52).  These facts show that "the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Alvarez, supra,* 228 Cal. App. 4th at 945.

Likewise, there is no rational reason a loan modification relationship is somehow *more special* than one involving a non-defaulting borrower.  Such a contention would lead to the absurd result that a servicer/bank owes more of a duty of care to a breaching borrower who breached than one who has honored his obligations.  If the defaulted borrower is owed a duty of care with respect to the handling of his documents, then a non-defaulting borrower would be entitled to the same duty from a lender. (FAC ¶143).

D.   Chase's Claim That It Cannot Ascertain What Statutory Provisions Are Alleged to Create A Legal Duty Is Disingenuous.

As putative grounds for its dismissal of the negligence claim, Chase also asserts that while "Plaintiffs contend that Chase owes them a duty based on statutory law, specifically Section 2941 of the California Civil Code…and..RESPA.  Yet, Plaintiffs do not point to any provision in section 2941 or RESPA that creates a legal duty." (Motion 8:27-28; 9:1-3).  This argument does not hold water. Paragraph 139 of the FAC specifically details in 20 lines of text including direct quotes, the language in Civil Code Section 2941 that Plaintiffs allege creates Chase's legal duty to stand ready to deliver "the original note, deed of trust, request for full reconveyance and other documents as may be necessary to reconvey or cause to be reconveyed the deed of trust."   Chase cannot in good faith ignore Paragraph 139 for the sake of rhetoric.

Paragraph 140 of the FAC details the duties that RESPA imposes on Chase. They include a duty to timely and properly respond to Qualified Written Requests by "conducting investigation, taking the action requested" and within 30 days providing

"information requested by the borrower or any an explanation of why the information requested is unavailable" *etc.,* Thus, Chase received quotes from the statutory language enumerating the duties under RESPA as well, belying any honest argument that Chase somehow cannot figure out what RESPA provision is actually being referenced.

In support of its argument, Chase cites *Fullmer v. JPMorgan Chase Bank*, 2010 WL 2511178 *7 (E.D.Cal.,2010). It is readily distinguishable because there the plaintiff alleged no damages ("assuming, however, that JPMorgan's alleged failure to respond to the QWR was a statutory violation,[2] plaintiff has not alleged any injury or damage related to JPMorgan's conduct"). In contrast, here the FAC alleges that the QWR was the statutory violation, quoting verbatim from the provisions themselves, such that no court would have to *assume* that the QWR was the statutory violation alleged. Moreover, the *Fullmer* court did not grant the dismissal due to failure to specify the statutory section; it determined that if the QWR were the statutory violation pled, "plaintiff has not alleged any injury or damage related to JPMorgan's conduct." *Id* at 7. In sum, the case does not in any way make Plaintiffs claim somehow insufficient, as the FAC gives Chase direct quotes. As to *Peay v. Midland*, 2010 WL 476677 *3 (E.D.Cal.,2010), where the plaintiff did not even bother to oppose a motion to dismiss,

_____

[2]As the seminal case of *Alvarez, supra,* 228 Cal. App. 4th at 951, highlighted "legislation…sets forth policy considerations that should affect the assessment whether a duty of care was owed to [plaintiffs] at that time." Ergo, where conduct a plaintiffs allege "breached a duty of care in this case…is conduct now regulated by" statute "these obligations fall well within the duty to use reasonable care." *Id.* In other words, courts have found a breach of duty of care by a lender in "failing to abide by the requirements" of a statute. *See Hild supra*, 2015 WL 401316 *6 (denying motion to dismiss whereas plaintiffs sufficiently alleged a *prima facie* claim of negligence by alleging that lender/servicer "breached that duty by failing to abide by the requirements of HBOR" otherwise known as Civil Code § 2923.7, and "thus properly allege[ing[ a breach of [Defendant's] duty of care."); *see also Johnson, supra,* 2015 WL 662261 (finding breach of duty on part of lender in failing to abide by statutory enactment); *Shapiro v. Sage Point Lender Services*, 2014 WL 5419721 *10 (C.D.Cal.,2014) (denying motion to dismiss negligence claim, noting that under statutory scheme lender had a duty of care); *Segura*, *supra*, 2014 WL 4798890 *14 (finding bank owed a duty of reasonable care due to "the statutory scheme established by HBOR.")

the complaint there also did not quote from the RESPA passages.  In contrast, the Sadinskys' FAC points to and quotes from the exact RESPA provision that creates such a duty, giving Chase full notice of the statutory violation alleged here too.

## VI.   **CONCLUSION**

For all the reasons stated hereto, the Sadinskys respectfully submit that the Court should deny Defendant Chase Bank's F.R.C.P. Rule 12(b)(6) motion in full.

Respectfully submitted,

**THE COWAN LAW FIRM**
Jeffrey W. Cowan
Ilana Makovoz

DATED: March 19, 2015

By:   *Jeffrey W. Cowan*
_____
Jeffrey W. Cowan
Attorneys for **Plaintiffs**